## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**BRITTANY ROSE,**

        **Plaintiff,**

                                 **Case No. 1:17-cv-252**

      **v.**                       **JUDGE DOUGLAS R. COLE**

**BERSA,** *et al.,*

        **Defendants.**

## OPINION AND ORDER

This cause comes before the Court on Defendant Bersa, S.A.'s ("Bersa") Motion to Dismiss for Lack of Jurisdiction (Doc. 39), Defendant Eagle Imports' Motion for Judgment on the Pleadings (Doc. 44), as well as Plaintiff Brittany Rose's motion asking the Court to convert Defendants' motions to motions for summary judgment, and requesting discovery and an extension of time to respond to those motions once converted (Doc. 48), and Rose's motion seeking jurisdictional discovery (Doc. 49). For the reasons below, the Court **GRANTS** Bersa's Motion to Dismiss (Doc. 39), **GRANTS IN PART** Eagle Imports' Motion for Judgment on the Pleadings (Doc. 44), **GRANTS IN PART** Rose's motion seeking conversion of the motions, discovery, and additional time (Docs. 48), **DENIES** Rose's motion for jurisdictional discovery (Docs. 49), and **DISMISSES** Rose's Amended Complaint (Doc. 37) as it relates to Bersa for lack of jurisdiction.

## BACKGROUND

**A.    Facts As Alleged In Rose's Amended Complaint.**

In her Amended Complaint, Rose, an Ohio resident, alleges that she was injured on August 8, 2015 (but she doesn't say where the injury occurred), while target shooting with a Bersa Thunder 380, a gun that her father had acquired sometime around November 2005. (Rose's Am. Compl. at ¶¶ 3, 7, Doc. 37, #324). Due to an alleged design defect associated with the gun's firing pin, the gun fired "not once, but on a continuing basis." (*Id.* at ¶¶ 8, 9). As a result of the gun's alleged malfunction, Rose suffered severe injuries to the tips of her fingers when the gun fired more rounds than Rose had expected. (*Id.* at ¶ 12, #325).

Rose alleges that this case falls within the Court's diversity jurisdiction, *see* 28 U.S.C. § 1332(a), "as the case involves a dispute between citizens of different states and the amount in dispute exceeds $75,000.00." (*Id.* at ¶ 1, #323). On the citizenship front, Rose asserts that "Bersa is a firearms manufacturer from Argentina that does business in the United States exclusively through Defendant Eagle Imports." (*Id.* at ¶ 4, #324). Further, Rose alleges that "Bersa has no known agents, facility, or other presence within the United States (apart from [Eagle Imports]) and has been served, with a letter rogatory pursuant to the Hague Convention." (*Id.*). Rose states that "Eagle Imports is a New Jersey corporation doing business in the state of Ohio" and "is the exclusive North American distributor for Bersa." (*Id.* at ¶ 5). Finally, Rose also states that the gun "was first placed into the stream of commerce and sold to a consumer less than ten years before the injury occurred[,]" (*id.* at ¶ 11), presumably by "John Doe #1" who "is a person or persons" that "assisted in putting the firearm in

2

the stream of commerce … ." (*Id.* at ¶ 6). Rose does not say anything about John Doe #1's citizenship, whether he directed business activities at Ohio, or whether he acted on behalf of Bersa or Eagle Imports.

Notably, although the Amended Complaint does not specify where Rose's injury occurred, Rose alleges that venue is proper in this Court "because a substantial amount of events giving rise to this claim occurred within the Southern District of Ohio." (*Id.* at ¶ 2, #323).

Based on those allegations, Rose asserts in her Amended Complaint two product liability claims against Bersa, Eagle Imports, and John Doe #1 (collectively, "Defendants"): one arising under New Jersey law and the other under Ohio law. (*Id.* at ¶¶ 13–31, #325–27). She acknowledges that she cannot pursue both claims, but instead pursues them in the alternative, depending on which forum's law applies. (*Id.* at ¶ 14, #325).

In her first cause of action, titled "Product Liability Under New Jersey Law N.J.S. §§ 2A:58C-1, et seq." Rose states that:

> Under choice of law analysis used in the forum state [(i.e., Ohio)], New Jersey Law product liability law applies if the Ohio statute of repose would otherwise bar the matter because, under these facts, the New Jersey government interest in its manufacturers and sellers purveying safe products outweighs the Ohio interest in a lesser burden for its state courts.

(*Id.* at ¶ 14, #325). Rose then states that Eagle Imports is a "Seller" under New Jersey law and that, because Bersa has no agents, facility, or other presence within the United States, Eagle Imports "is strictly liable[,] in accordance with N.J.S. § 2A:58C-9 for damages caused by defective design and failure to warn." (*Id.* at ¶¶ 17, 18). And

3

because "the design defect and failure to warn show[] a willful disregard" for Rose's rights and were likely to cause severe injury or death, she alleges, "Defendants are jointly and severally liable for punitive damages in an amount believed to approximate $2,000,000.00." (*Id.* at ¶ 21, #325–26).

In her alternative product liability claim, which relies on Ohio law, Rose states that "[t]he statute of repose under [Ohio Revised Code] § 2305(c)(1) does not apply as the first sale to a consumer took place less than ten years before the injury." (*Id.* at ¶ 23, #326). Rose then asserts that Eagle Imports is a "Seller" under Ohio law. (*Id.* at ¶ 26). Next, Rose alleges that, because Bersa is not subject to process in Ohio, Eagle Imports, a "Seller" according to Rose, "is liable as the manufacturer in accordance with [Ohio Revised Code] § 2307.78(b)(1) for damages caused by defective design and failure to warn." (*Id.* at ¶ 28). Finally, Rose repeats her statement that "as the design defect and failure to warn shows a willful disregard" of Rose's rights and were likely to cause her severe injury or death, "Defendants are jointly and severally liable for punitive damages in an amount believed to approximate $2,000,000.00." (*Id.* at ¶ 31, #327).

## B.    Procedural Background.

Rose originally filed this action against Defendants on April 18, 2017, alleging a single product liability claim under Ohio law. (Doc. 1). About four months later, on August 14, 2017, Rose filed notices of executed summons as to Bersa and Eagle Imports. (Docs. 5, 6). After roughly another four months, on January 2, 2018, Bersa and Eagle Imports jointly filed a Motion for Judgment on the Pleadings (Doc. 9),

arguing that the Court should enter judgment in their favor because: (1) Rose failed to state a claim upon which relief could be granted, given that Ohio's ten-year statute of repose bars Rose's claim, and that Eagle Imports, a supplier, cannot be liable on a product liability theory under Ohio law; (2) Rose had not properly served Bersa; and (3) the Court lacks personal jurisdiction over Bersa, an Argentinian company. (*See id.*).

Rather than respond directly to Bersa and Eagle Imports' Motion, Rose filed a Motion to Deem Eagle Imports Properly Served (Doc. 11) and a "Motion to File an Amended Complaint and to Overrule Defendants' Motion for Judgment on the Pleading [sic] as Moot." (Doc. 12). In the latter, Rose requested that the Court permit her to file an amended complaint in which she would assert against Defendants a product liability claim arising under New Jersey law. She explained that New Jersey law, unlike Ohio law, does not have a statute of repose that bars such claims brought more than a certain period of time after the product's initial sale. The Court then found that Rose's latter Motion (Doc. 12) was in fact more properly considered a response to Defendants' Motion for Judgment on the Pleadings.

Once Rose's filings and Defendants' Motion for Judgment of the Pleadings became ripe, the Court issued an Order that construed Rose's Motion to Deem Eagle Imports Properly Served as a request for additional time to serve Eagle Imports, which the Court granted. (Doc. 23). The Order further denied Defendants' Motion for Judgment on the Pleadings to the extent it requested dismissal of Eagle Imports due to insufficient service of process. (*Id.*). In that same Order, the Court noted that two

issues raised in Defendants' Motion for Judgment on the Pleadings remained pending: (1) Bersa's request for dismissal due to insufficient process and service of process, and (2) "[t]hose portions of [the Motion] that do not address process and service of process[.]" (*Id.* at 16, #192). The Court did not resolve those issues.

Over the next year, the parties battled over the service issues that the Court had addressed in its previous Order. On June 24, 2019, Rose submitted a Notice of Successful Service upon Bersa under the Hague Convention. (Doc. 35). In light of that Notice, the Court then issued an Order three months later, on September 27, 2019, denying as moot the remaining requests that Defendants raised in their Motion for Judgment on the Pleadings, and granting Rose's Motion for Leave to File an Amended Complaint. (Doc. 36). That same day, Rose filed her First Amended Complaint adding the New Jersey law claim. (Doc. 37).

## C. Pending Motions.

Two weeks after Rose filed her Amended Complaint, on October 11, 2019, Eagle Imports filed its Answer to the First Amended Complaint (Doc. 38), and Bersa filed a Motion to Dismiss for Lack of Jurisdiction. (Doc. 39). Bersa's motion referenced a (second) Motion for Judgment on the Pleadings, which Eagle Imports planned to file soon after. (*See id.*). In response, Rose filed a Motion (Doc. 41) requesting the Court to extend the deadline for her response to Bersa's motion until Eagle Imports filed its then-forthcoming motion for judgment on the pleadings. The Court granted Rose's Motion. (Nov. 13, 2019 Dkt. Entry). The case was then reassigned to the undersigned judge on December 11, 2019. (Doc. 43).

Almost a month later, on January 7, 2020, Eagle Imports filed its awaited Motion for Judgment on the Pleadings (Doc. 44), which relied on the invoice that Eagle Imports attached to its Answer (the "Invoice") (Doc. 38). Rose then once again implemented her previous strategy and, rather than directly respond to the Motion for Judgment on the Pleadings and Motion to Dismiss, filed a "Motion To Treat [Defendants' Motions] As Motions For Summary Judgment, And To Defer These Motions In Order To Allow For The Conduct Of Discovery" (Doc. 48) and a "Motion for Jurisdictional Discovery" (Doc. 49). She filed these motions on the day that her responses to Defendants' Motions were due.

In Rose's Motions, Rose requests that the Court: (1) convert *both* Bersa's Motion to Dismiss and Eagle Imports' Motion for Judgment on the Pleadings into Motions for Summary Judgment, (2) strike the Invoice as the Court cannot consider that evidence when ruling on a motion for judgment on the pleadings, and (3) allow Rose to conduct discovery to respond to Defendants' Motions. (Docs. 48, 49). More specifically as to the last request, Rose asks the Court to permit jurisdictional discovery related to Bersa so that Rose may evaluate whether personal jurisdiction exists over Bersa in this case. Rose similarly requests the Court allow discovery related to Eagle Imports as doing so, Rose claims, would enable her to address the state law that applies and to determine whether her Ohio product liability claim is barred by Ohio's statute of repose, as Eagle Imports argues.

Rose also addresses the merits of the arguments that Defendants raised in their Motions. That is, Rose responds to Bersa's argument that personal jurisdiction

7

does not exist over Bersa in this case, as well as to Eagle Imports' argument that Rose fails to state a claim against Eagle Imports. That being so, and because Rose had ample time to respond to Defendants' Motions—indeed the Court granted her an extension to respond to Bersa's Motion to Dismiss (*see* Nov. 4, 2019 Dkt. Entry)—the Court construes Rose's Motions as Memoranda in Opposition to Defendants' Motions.

In response to Rose's Motions, Defendants timely filed response briefs (Docs. 50, 51) to which Rose timely filed reply briefs (Docs. 52, 53). As the Court construes Rose's Motions as Memoranda in Opposition to Defendants' Motions, but also addresses Rose's requests in those Motions, both Defendants' Motions (Doc. 39, 44) and Rose's Motions (Doc. 48, 49) are properly before the Court. The Court will address Rose's requests in this Opinion as they arise in resolving Defendants' Motions.

## LAW AND ANALYSIS

### A. Bersa's Motion To Dismiss For Lack Of Jurisdiction.

In Bersa's Motion to Dismiss, Bersa argues that Rose has failed to allege facts that indicate Bersa is subject to Ohio's long-arm statute or that it purposefully availed itself of the privilege of conducting business in Ohio, and so the Amended Complaint does not show that this Court can exercise jurisdiction over Bersa. In fact, Bersa argues, Rose pleads allegations in the Amended Complaint that establish this Court *lacks* jurisdiction over Bersa. For example, Bersa points out, Rose states that "Bersa has no known agents, facility, or other presence within the United States" and

that Bersa "is not subject to process in the State of Ohio." (Bersa's Mot. at 3, #340 (quoting Rose's Am. Compl. at ¶¶ 4, 18, 27, #324–26)).

In response, Rose asserts in her Motion for Jurisdictional Discovery that she "believes the allegations in her amended complaint, as well as the publicly available information presented in the attached memorandum, clearly support jurisdiction[; n]evertheless, Rose moves this Court for an order granting her leave to conduct jurisdictional discovery, and for an extension of the deadline for her to respond to [Bersa's] motion … until after jurisdictional discovery has been completed." (Rose's Mot. for Jurisdictional Disc. at 1, Doc. 49, #500). In that Motion, Rose attached three exhibits that, according to Rose, establish Bersa regularly conducts business in Ohio. Separately, Rose filed another motion that requested the Court to convert Bersa's Motion to Dismiss to a Motion for Summary Judgment in hopes that the Court would allow Rose to conduct full discovery. (*See* Doc. 48).

### 1. Standard of Review.

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant. In considering whether personal jurisdiction exists over a given defendant, district courts have discretion to decide the motion on the pleadings alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Here, the Court can decide Bersa's Motion to Dismiss on the pleadings, without a hearing or discovery.

Where a Rule 12(b)(2) motion is decided on pleadings without an evidentiary hearing, the Court applies a burden-shifting framework. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). Under that framework the Court must review the allegations in the light most favorable to the plaintiff, "without considering the 'controverting' assertions of the Defendants." *Intera Corp. v. Henderson*, 428 F.3d 605, 614, n.7 (6th Cir. 2005).[1] At the first step of analysis, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Am. Greetings Corp.*, 839 F.2d at 1169 (citation omitted); *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In analyzing whether the plaintiff has carried that burden, which is "relatively slight," the Court must view the allegations in a light most favorable to the plaintiff. *Am. Greetings Corp.*, 839 F.2d at 1169. Still, Rose must establish "with reasonable particularity sufficient contacts between [Bersa] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

If the plaintiff can make such a showing, the burden shifts to the defendant, whose motion to dismiss must be properly supported with evidence. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). And, if the defendant can satisfy that burden, then the burden shifts back once more to the plaintiff, who can no longer

---

[1] As the Court has discretion in determining how best to analyze Rule 12(b)(2) motions and because the Court will determine Bersa's Rule 12(b)(2) Motion by reviewing the pleadings contained in Rose's Amended Complaint, the Court **DENIES** Rose's Motion for Jurisdictional Discovery (Doc. 49) and Motion to Convert Rose's Motion to Dismiss to a Motion for Summary Judgment (Doc. 48), as those motions relate to Bersa's Motion to Dismiss for Lack of Jurisdiction.

"stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.*

> ### 2. Rose Alleges Facts That, Even When Considered In A Light Favorable To Her, Fail To Establish That This Court Can Properly Exercise Its Jurisdiction Over Bersa.

Because the Court is sitting in diversity, the personal jurisdiction inquiry involves two separate sources of law. First, the Court must determine whether Bersa is subject to suit under Ohio's long-arm statute. *See* Ohio Rev. Code § 2307.382. Second, the Court must separately ascertain whether exercising jurisdiction over Bersa comports with the due process requirements of the United States Constitution. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Jurisdiction arises only if the answer at each step is "yes." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Here, the Court starts with the former and finds that Rose has not carried her burden of making a prima-facie showing that Bersa is subject to jurisdiction under Ohio's long-arm statute. Accordingly, the Court need not review whether Rose's allegations satisfy the due process requirements that also must be met before this Court can exercise jurisdiction over Bersa.

> ### a. Rose Fails To Allege Facts That Make A Prima-Facie Showing That Bersa Is Subject To Jurisdiction Under Ohio's Long-Arm Statute.

The state jurisdictional law at issue here is Ohio's long-arm statute, which permits a court to exercise jurisdiction only when the plaintiff satisfies "one of the enumerated bases" in that statute. *Conn*, 667 F.3d at 718. Although the statute lists

many bases, Rose discusses only one—Ohio Revised Code § 2307.382(A)(4). That section requires that Bersa, acting directly or by an agent:

> Caus[ed] tortious injury in [Ohio] by an act or omission outside this state if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

*Id.* And the statute further states that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." *Id.* at § 2307.382(C).

Rose asserts that § 2307.382(A)(4) applies here because Bersa purportedly derives "substantial revenues" from selling its guns in "large quantities" to Eagle Imports, which in turn resells those guns to retailers in Ohio with whom Eagle Imports has ongoing relationships. (Rose's Mot. at 7, Doc. 49, #506). As Bersa points out, though, Rose does not allege any of this in her Complaint or Amended Complaint. Rather, she states it in her Motion for Jurisdictional Discovery, which (as discussed above) the Court construes as a Response to Bersa's Motion to Dismiss. (*See id.*). In any event, Rose ultimately does not appear to stand by the assertions in her non-pleading papers that Bersa derives "substantial revenue" from its guns sold into Ohio. Immediately after making the claim, she states she must " conduct discovery in order to ascertain the full extent of Bersa's business contacts with Ohio, including the number of its guns that have been sold in Ohio, the amount of revenue it has derived from guns sold in Ohio, and the nature of its relationship with Eagle Imports … ." (*Id.*).

In some ways, that puts the cart before the horse. The Court's authority to require Bersa to participate in discovery derives, at least to some extent, from the Court's jurisdiction over the company in the first instance. A prima facie case of jurisdiction, at the very least, is required to support the exercise of such power. A district court in this Circuit explained that very point in denying a party jurisdictional discovery:

> Jurisdiction is power. Without jurisdiction, the Court lacks power to order parties (either parties to the case or third parties) to comply with discovery requests or subpoenas.

*May v. Wal-Mart Stores, Inc.*, 751 F. Supp. 2d 946, 954 (E.D. Ky. 2010). Just so. A plaintiff's bare assertion that "I think the Court might have jurisdiction over the defendant, and so the Court should order the defendant to participate in discovery to prove that point" doesn't cut it.

In saying this, the Court acknowledges the oft-repeated admonition that courts always have jurisdiction to determine their own jurisdiction. *See, e.g.*, *United States v. Shipp*, 203 U.S. 563, 573 (1904). That principle is certainly true, but does not fully answer the question here. To be sure, the Court has the power to determine its own jurisdiction, but it is a separate inquiry as to whether the Court has the power to order other parties to participate in the Court's inquiry in that regard. If Rose had provided some reasonable basis in her Amended Complaint for believing that jurisdiction exists—a prima facie case of jurisdiction—the analysis would be different. But absent that, the Court declines Rose's request to exercise judicial power over Bersa to force the latter to participate in discovery.

That is especially true here, as, even if the Court were inclined to put aside Rose's failure to offer any allegations about Bersa's activities in Ohio in her pleadings, and likewise were inclined to treat the statements in her briefs as actual allegations of fact in her pleadings, rather than a collection of might-be's offered as argument, Rose's argument fails for yet another independent reason. In particular, she does not allege that Bersa caused a tortious injury *in Ohio*. Indeed, Rose does not say where her injury occurred at all. That omission is independently fatal to her argument under § 2307.382(A)(4) of Ohio's long-arm statute. *Malone v. Stanley Becker & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) (quoting *Jackson v. State St. Bank & Tr. Co.*, 674 N.E.2d 706, 710 (1996) ("A determination of long-arm jurisdiction under [§] 2307.382(A)(4) first entails a finding that the tortious injury occurred in Ohio.")). Nor can her answer on this front be that she needs discovery from Bersa to address the issue. Clearly, Rose knows where her injury occurred. Having failed to provide that information, she has not satisfied the requirements for jurisdiction under § 2307.382(A)(4).

For either, or both, of these reasons, Rose fails to carry her burden of making even a prima-facie showing that Bersa is subject to suit under Ohio's long-arm statute. Accordingly, the Court **GRANTS** Bersa's Motion to Dismiss for lack of personal jurisdiction and **DENIES** Rose's request for jurisdictional discovery.

## B.  Eagle Import's Motion For Judgment On The Pleadings.

In Eagle Imports' Motion for Judgment on the Pleadings, Eagle Imports makes two arguments, only one of which the Court elects to reach at this juncture. In that

14

argument, Eagle Imports first claims that Ohio's choice of law rules compel the conclusion that only Ohio law applies in this case. And, given that Ohio law controls (or so Eagle Imports says), Ohio's ten-year statute of repose bars Rose's current claim as untimely. (Eagle Imports' Mot. at #381 (citing Ohio Rev. Code § 2305.10(c)(1))). Eagle Imports supports that argument by reference to the Invoice that Eagle Imports attached to its Answer, which indicates that Eagle Imports sold 50 Bersa guns—including the one that allegedly injured Rose—to non-party Jerry's Sport Center in Forest City, Pennsylvania, in February 2003. (*See* Invoice, Doc. 38). The Invoice also purportedly shows that Eagle Imports then shipped those Bersa guns to Outdoor Sports Headquarters (apparently an affiliate of Jerry's Sport Center) in Dayton, Ohio, on or around April 8, 2003. (*See id.*). Eagle Imports says that its delivery of the gun to Outdoor Sports Headquarters, rather than that entity's sale to a subsequent purchaser, is what triggered the ten-year repose period, which had thus lapsed as of the time Rose was injured on August 8, 2015.

In response to Eagle Imports' Motion, Rose filed two briefs, both of which address Eagle Imports' arguments and request miscellaneous relief from the Court. (*See* Rose's Mots., Docs. 48, 49). As relevant to the argument above, Rose moves to strike the Invoice because, Rose argues, it is not a "written instrument" as contemplated by Rule 10(c), and Eagle Imports has not authenticated the Invoice, and so the Court cannot properly consider the Invoice at the pleading stage. (*Id.* at #474). Rose then requests that, in the event that the Court does not strike the Invoice, the Court should instead treat Eagle Imports' Motion for Judgment on the Pleadings

15

as a motion for summary judgment. (*Id.* at #475). Finally, Rose requests the Court to permit discovery so that she may properly respond to Eagle Imports' argument that, under Ohio's conflict-of-law rules, Ohio law applies to this case. (*Id.* at #476).

As this description reveals, determining whether Eagle Imports is entitled to judgment on the pleadings on this argument involves two separate inquiries. First, the Court must determine whether Ohio's ten-year statute of repose applies to this case. Second, if so, the Court must address whether the Invoice on which Eagle Imports relies in support of its request for judgment on the pleadings is both (1) properly considered at this juncture, and (2) fatal to Rose's claim. The Court starts by setting forth the standard of review that applies at this stage of the proceeding, and then considers each of these issues in turn.

### 1.      Standard of Review.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). This means all factual allegations in the complaint are construed in a light most favorable to the plaintiff, with all their allegations accepted as true, and all reasonable inferences drawn in their favor. *See Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018). All a plaintiff need do is provide "a short and plain statement of the claim showing that the pleader is intitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

16

But that short and plain statement must offer more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). There must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quotation omitted). "Conclusory allegations or legal conclusion masquerading as factual allegations will not suffice." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). In sum, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.*

## 2. Only Ohio Law Applies To Rose's Amended Complaint.

The Court must first determine whether Ohio's statute of repose applies to Rose's claim. In diversity cases, federal courts apply the conflict-of-law rules of the state where the court sits. *Klaxon Co. v. Stentor Elec. Mfg*, 313 U.S. 487, 496 (1941). Ohio, the forum State here, has adopted the two-step approach set forth in the Restatement (Second) of Conflict of Laws. *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288 (Ohio 1984). The first step is to determine if there is an actual conflict between

17

the substantive laws of the states involved. *Glidden v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (2006). A conflict must exist between the laws of the states for the Court to proceed to the next step, which is to choose between them. *Morgan*, 474 N.E.2d at 288–89.

The parties do not appear to dispute that a conflict exists between the two states' laws at issue here. Ohio law includes a statute of repose that bars product liability claims against the product's supplier when the allegedly faulty product was "delivered to its first purchaser" more than ten years before the injury. Ohio Rev. Code § 2305.10(C)(1). New Jersey has no such statute of repose. And the Sixth Circuit has suggested that state statutes of repose are substantive in nature and not "just a procedural hurdle." *Huddleston v. United States*, 485 F. App'x 744, 745–46 (6th Cir. 2012). To the extent that is the case (more on that below), the first step of Ohio's conflict-of-law analysis has been met.

At the second step in Ohio's choice-of-law framework, the Court must determine which of the two state's laws to apply. To make that assessment, Ohio law provides that the Court should follow the approach set forth in the Restatement (Second) of the Law of Conflicts § 146, which states:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to a particular issue, some other state has a more significant relationship … to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts § 146 (1971); *see also Morgan*, 474 N.E.2d at 288 (applying Ohio choice-of-law provisions).

In other words, courts start with "a presumption … that the law of the place of the injury controls, unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan*, 474 N.E.2d at 289. In assessing whether another state has the more significant relationship, a court is to "consider the general principles set forth in Section 145," which include:

> (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship of the parties, if any, is located; and (5) any factors under Section 6 [of the Restatement (Second) of Conflicts] that the Court may consider relevant.

*Id.* (footnotes omitted); *see also Clay v. AIG Aerospace Ins. Servs., Inc.*, No. 3:14-cv-2537, 2015 WL 4986397, at *3 (N.D. Ohio Aug. 19, 2015) (same) (first citing *Morgan*, 474 N.E.2d at 289, then Restatement (Second) of Conflicts § 145 (1971)). "All of these factors are to be evaluated according to their relative importance to the case." *Morgan*, 474 N.E.2d at 289.

That framework presents somewhat of a problem here, as Rose does not allege where her injury occurred. Indeed, Rose says precious little about any geographic aspect of this case in her Amended Complaint, beyond her nebulous allegation that "a substantial amount of events giving rise to this claim occurred within the Southern District of Ohio." (*Id.* at ¶ 2, #323). Absent information about where the injury occurred, of course, no presumption can arise as to which state's law controls based on that factor. The only other information she supplies at least seems to suggest that the only "significant relationship" is to Ohio, where a "substantial amount" of the

relevant events occurred. Thus, absent evidence to the contrary, her Amended Complaint would suggest that Ohio law controls.

The only factor that may cut another way based on Rose's allegations is factor three, the domicile of the parties. Rose alleges that Eagle Imports is domiciled in New Jersey. The problem in relying on that allegation to find that New Jersey law should apply, though, is that the Restatement (Second) of Conflicts provides that, in product liability cases, the importance of a given party's place of business or domicile will usually carry little weight absent some other contacts from that state that "group" together to create a more meaningful connection between the case and that state. Restatement (Second) of Conflicts § 145, cmt. e. So, Eagle Imports being headquartered in New Jersey is of little import to the current analysis, absent some other meaningful connection to that state, which Rose's Amended Complaint does not identify. And Rose (the other relevant party in the conflict analysis) is domiciled in Ohio, where (as already noted) she alleges a substantial amount of the events underlying the lawsuit occurred. Thus, this factor likewise seems to suggest that Ohio law should control.

Finally, § 6 of the Restatement further directs the Court to consider the relevant policies of all interested states and choose the law of the "state which will best achieve the basic policy, or policies, underlying the particular field of law involved." *Id.* at § 6, cmts. f, h. Here, Ohio undoubtedly has interests in protecting its citizens from defective products, *see Morgan*, 474 N.E.2d at 289 ("It is without question that [Ohio] has an important policy objective in deterring the manufacture

20

and sale of defective products.") (citations omitted), but Ohio also has an interest in providing reasonable limits on the liability of parties who sell goods to persons in the state. *See Groch v. Gen. Motors Corp.*, 117 Ohio St. 3d 192, at ¶ 170 (Ohio 2008) (noting that Ohio's statute of repose serves to protect defendants from "exposure to disruptive and protracted liability"). The particular law at issue here—Ohio's statute of repose as to product liability actions—balances the tensions between those sometimes-competing policies. *See id.; CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) ("Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."). More specifically, Ohio has decided to limit the potential liability of those sending products into the state (to protect potential defendants) and set that limit at ten years (to balance the interests of both potential plaintiffs and defendants). This Court sitting in a diversity matter arising out of Ohio must respect Ohio's policies, as well as the interests that drove those policies. This is particularly true under the current circumstances, where an out-of-state defendant (Eagle Imports) may have relied on such a liability limitation when considering whether to conduct business in Ohio in the first place. Accordingly, the principles set forth in § 6 further support applying Ohio law here.

In contrast, consideration of those same principles from the perspective of New Jersey suggests that New Jersey has no significant interest in this case—and certainly no interests that overcome Ohio's interests identified above. There is no clear reason why New Jersey's legislative policies would be intended to affect the parties that are before the Court on the issues presented here. While New Jersey may

arguably have some interest in enforcing its law against its own corporate residents when the products those resident corporations sell injure non-resident customers, that interest, if it exists at all here, "is only slight and does not support application of its law to the litigation." *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 621 (8th Cir. 2001). In short, New Jersey has no significant interest in applying its law so that a non-resident plaintiff (Rose), who was injured by a product manufactured in another country and not sold within New Jersey, may nonetheless hold a New Jersey corporation (Eagle Imports) liable in derogation of Ohio's time limits on products liability claim. Thus, § 6, when applied to the New Jersey side of the scale, still favors the application of Ohio law.

As Rose has failed to identify any state that has a more significant interest than Ohio in the issues presented here, the Court must apply Ohio law, including Ohio's ten-year statute of repose.

All of the above presupposes that the traditional conflict-of-law analysis applies to statutes of repose. But that may not be the case. A different conflict-of-law analysis often applies to timeliness issues (e.g., statutes of limitations), especially if a state has enacted a so-called borrowing statute. Ohio has done so. *See* Ohio Rev. Code § 2305.03. As further explained below, if that borrowing statute applies to statutes of repose, then Ohio's ten-year statute of repose governs here, even if the Court is wrong and it is New Jersey law, rather than Ohio law, that supplies the substantive product liability rules that govern Rose's claim.[2]

---

[2] The parties did not raise Ohio's borrowing statute, or the impact that it may have on the application of Ohio's statute of repose. The Court nonetheless finds it necessary to address

To see why that is the case, let's start with the typical statute-of-limitations analysis. The general common law rule was that Ohio's statute of limitations governed cases filed in Ohio courts, even if, under conflict-of-law principles, the law of a different state (say New Jersey) supplied the substantive rules of decision for the claim at issue. Historically, that was because limitations periods were treated as procedural matters, rather than substantive matters, and thus "are, and must be, governed by the law of the forum," *Taylor v. First Resolution*, 72 N.E.3d 573, 585 (Ohio 2016), sometimes referred to as the *lex fori. See, e.g., Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 829 (6th Cir. 2019) ("'Ordinary limitations of actions are treated as laws of procedure, and as belonging to *lex fori*, as affecting the remedy only, and not the right.'") (quoting *Davis v. Mills*, 194 U.S. 451, 454 (1904)). Under that approach, Rose's action would be governed by the Ohio statute of limitations, even if under traditional choice of law principles New Jersey law supplied the substantive product liability rules of decision.

But against that common law backdrop, many states, including Ohio, began imposing a legislative gloss. In particular, wary of forum shopping (where the plaintiff would bring her suit in State B, even though asserting claims under the law of State A, merely because State B had a longer limitations period than State A), state

---

that issue. That is because, as explained more fully below, the Court concludes that, as a matter of law, Ohio's borrowing statute, rather than Ohio's general conflict-of-law framework, is what governs as to the repose period. Thus, Rose's request for discovery to substantiate her argument that the conflict-of-law framework supports application of New Jersey law is moot. (*See* Doc. 48). Even if such discovery would assist her in showing that New Jersey law would supply the substantive product liability rules, that does not change the result regarding the statute of repose, a statute which may well prove dispositive of her claim.

legislatures enacted borrowing statutes to serve as "a legislative exception from the general rule that the forum always applies its statute of limitation." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004). To that end, Ohio's borrowing statute provides:

> No civil action that is based upon a cause of action that accrued in any other state … may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state … has expired or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code § 2305.03(B). In other words, at least as to statutes of limitations, the rule in Ohio is that, if another state's substantive law applies to the underlying claim, then Ohio courts must use *the shorter* limitations period, as between Ohio's and that of the other state.

For example, assume that here the conflict-of-law analysis said that New Jersey law should govern the product liability claim. If New Jersey had a one-year statute of limitations for products liability claims, and Ohio had a two-year statute of limitations, Ohio's borrowing statute would direct an Ohio court to use New Jersey's limitations period. Conversely, if the limitations periods of the states involved were reversed, with Ohio having the one-year period, and New Jersey the two-year period, then Ohio's statute of limitations would apply. In short, the forum state's borrowing statute, not its general conflict-of-law principles, nor the tradition of relying on *lex fori* as to procedural matters, is what determines which limitations period applies, and Ohio's statute says "use the shorter one."

24

But does the borrowing statute apply to statutes of repose? What muddies the water a little on that front is that, unlike statutes of limitations, which are typically considered "procedural," statutes of repose, as noted above, are often referred to as "substantive." *See Huddleston*, 485 F. App'x at 745–46. If that is so, the traditional notion that *lex fori* controls as to procedural rules (or at least did so pre-borrowing statutes) may not apply to statutes of repose, and the legislative change to the *lex fori* principle imposed through enactment of borrowing statutes may thus have been limited to procedural time periods (i.e., limitations periods), rather than repose periods.

The Sixth Circuit's precedent on this point is limited and somewhat contradictory. On the one hand, the appeals court has observed (in passing in a footnote) that "[b]orrowing statutes apply to both foreign statutes of limitation and statutes of repose, because both kinds of laws serve to limit the period in which a plaintiff may initiate an action." *Combs*, 354 F.3d at 589 n.11. But more recently, in *Wahl v. Gen. Elec. Co.*, 786 F.3d 491 (6th Cir. 2015), the court conducted a hypothetical[3] conflict-of-law analysis under Ohio conflict-of-law principles, and seemingly suggested that the result of that conflict-of-law analysis (which in *Wahl* said Tennessee law should apply) would also govern as to the statute of repose, just like any other substantive law. *Id.* at 500 ("Ohio's choice of law requires the application of Tennessee law *and its one-year statute of repose*.") (emphasis added). And the court reached that result without discussing Ohio's borrowing statute,

---

[3] The Court characterizes the Sixth Circuit's analysis on this issue in *Wahl* as hypothetical, because the Court actually held that Tennessee choice-of-law provisions governed.

suggesting (at least tacitly) that the borrowing statute would not apply to the which-statute-of-repose question. At the same time, the Court must take care not to overread *Wahl*. As already noted, the discussion of the issue there was, at best, an alternate ground of affirmation. And, at bottom, the answer to the proper treatment of statutes of repose under Ohio's borrowing statute is a matter of construing that statute, an issue that the *Wahl* court did not explicitly address, but to which the Court turns now.

As noted above, Ohio's borrowing statute says that the shorter of the two "period[s] of limitation" applies, so the question is whether the ten-year repose period set forth in § 2305.10 is a "period of limitation" for purposes of § 2305.03(B)'s shorter-of-the-two rule. Section 2305.03(A) of the borrowing statute strongly suggests that the answer to that question is "yes." That section says that "unless a different limitation is prescribed by statute," actions must be commenced within the "periods" "prescribed in sections 2305.04 to 2305.22." Ohio Rev. Code § 2305.03(A). Relying on that plain language, it appears that any "period" that is "prescribed in" those sections (i.e., §§ 2305.04 to 2305.22) as limiting a party's right to bring suit, is a "period of limitation" for purposes of § 2305.03. The statute of repose at issue here is a "period" specified in § 2305.10, which is a section that falls between §§ 2305.04 and 2305.22. Accordingly, that period constitutes a "period of limitation," and is subject to the shorter-of-the-two-periods rule set forth in § 2305.03(B).

As that is the case, even if Ohio's conflict-of-law principles result in New Jersey law applying to the product liability claim, under the shorter-of-the-two-periods rule

in Ohio's borrowing statute, Ohio's ten-year statute of repose would apply in place of New Jersey's non-existent period of repose. In sum, even if the Court is wrong in its conflict-of-law analysis, and New Jersey's (rather than Ohio's) product-liability law controls, Rose's product-liability claim under New Jersey law would still be subject to Ohio's ten-year statute of repose for such claims, as she has elected to advance that New Jersey claim in an Ohio forum, which is subject to Ohio's borrowing statute.

### 3. The Parties Must Conduct Limited Discovery To Determine Whether The Invoice That Eagle Imports Attached To Its Answer Is Authentic.

Given that Ohio's statute of repose applies to Rose's claim (whether as a matter of general choice-of-law principles or under Ohio's borrowing statute), the final issue the Court addresses is Eagle Imports' argument that the Invoice that Eagle Imports attached to its Answer warrants judgment on the pleadings in Eagle Imports' favor under that statute. According to Rose, the argument is a non-starter—because Eagle Imports never authenticated the Invoice, the Court cannot consider it here. For the reasons below, the Court finds that Rose's argument has merit. As a result, the Court does not grant judgment to Eagle Imports at this time. But, as the ten-year repose period appears to have a strong potential to be a case-dispositive issue, the Court directs the parties to engage in limited discovery addressed to that specific issue, so the Court can address that matter before the case proceeds more generally.

In ruling on Rule 12(b) or 12(c) motions, the Court considers the pleadings, which include the Complaint, Answer, and any written instruments attached as exhibits to those documents. *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D.

Ohio 2016) (citing Fed. R. Civ. P. 7(a), 12(c)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). The Sixth Circuit has broadly interpreted Rule 10(c)'s "written instrument" language to allow consideration of documents "referred to in the pleadings" and "integral to the claims without converting a motion to dismiss into one for summary judgment." *Fulton v. Enclarity, Inc.*, 962 F.3d 882, 890 (6th Cir. 2020) (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007)) (cleaned up). But even then, the Court may not consider such documents at the pleading stage if one of the parties questions the authenticity of the documents. *Williams v. Sterling Jewelers, Inc.*, No. 1:19-cv-70, 2019 WL 5587025, at *2–3 (S.D. Ohio Oct. 30, 2019), *adopted*, 2020 WL 42815 (S.D. Ohio Jan. 3, 2020).

Here, Eagle Imports has not attempted to authenticate the Invoice. Thus, as Rose has questioned the authenticity of that document (*see* Doc. 48 at 3–5, #473–75), the Court cannot consider it in reviewing Eagle Imports' Motion for Judgment on the Pleadings.

That leaves the Court in a bit of a quandary, because if Eagle Imports can establish that the Invoice is authentic, the Invoice, as Eagle Imports argues, would appear to be fatal to Rose's product liability claim given Ohio's statue of repose. That statute provides:

> [N]o cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product.

28

Ohio Rev. Code § 2305.10(c)(1). That is, the statute essentially consists of three elements. It bars claims against (1) manufacturers or suppliers, (2) if brought more than ten years after the date of delivery, to (3) a purchaser or lessee who is not using the product as a component in the production or creation of some other product. *Id.*

Eagle Imports argues in its Motion that the statute bars Rose's claim because: (1) Eagle Imports is a "supplier", (2) Eagle Imports delivered the handgun at issue to Outdoor Sports on April 8, 2003—more than 12 years before Rose suffered her alleged injuries, and (3) Rose does not (and cannot) allege that Outdoor Sports engaged in business in which it used the handgun as a component part of another product.

Based on the allegations in Rose's Amended Complaint, the Court agrees with Eagle Imports that the first and third elements of the statute of repose are met here. But to resolve Eagle Imports' contention regarding the second factor (i.e., that it delivered the handgun to Outdoor Sports on April 8, 2003), the Court would need to consider the unauthenticated Invoice. For the reasons discussed above, the Court cannot do so.

Hence the quandary—the Court agrees with Rose that discovery is necessary to determine the authenticity of the Invoice, but resolving that specific issue may well be dispositive on the viability of Rose's claim. Thus, in the interests of justice and in an effort to pursue the most efficient resolution of this matter, the Court limits discovery—for the time being—to the specific issue of the Invoice's authenticity.

Accordingly, the Court **GRANTS IN PART** Rose's Motion for Discovery and **CONVERTS IN PART** Eagle Imports' Motion for Judgment on the Pleadings to a

Motion for Summary Judgment on the narrow issue of whether Ohio's statute of repose bars Rose's claims. If Eagle Imports can carry its burden of authenticating the Invoice, then, unless Rose can create a genuine issue of material fact on that front or a genuine issue as to whether that Invoice accurately reflects the delivery date of the handgun at issue here, or can otherwise convince the Court that for some other reason Ohio's statute of repose does not bar the claim here, Eagle Imports will be entitled to summary judgment.

## CONCLUSION

For the reasons above, the Court **GRANTS** Bersa's Motion to Dismiss (Doc. 39), **GRANTS IN PART** Eagle Imports' Motion for Judgment on the Pleadings (Doc. 44), **GRANTS IN PART** Rose's Motion for Discovery and for Extension of Time to File Responses (Doc. 48), **DENIES** Rose's Motion for Jurisdictional Discovery (Doc. 49), and **DISMISSES** Rose's Amended Complaint (Doc. 37) as it relates to her claims against Bersa for lack of jurisdiction. In accordance with this Opinion, the Court further **DIRECTS** Rose and Eagle Imports to conduct discovery on the narrow issue of the Invoice's authenticity and **CONVERTS** Eagle Imports' Motion for Judgment on the Pleadings to a Motion for Summary Judgment on the remaining question of whether Ohio's statute of repose bars Rose's claim. The parties are directed to confer with each other, and to inform the Court of an appropriate timetable for completing such discovery and providing supplemental briefing to the Court on the issues identified immediately above. If the parties are unable to reach an agreed resolution

regarding such scheduling, they are directed to contact the Court to set a status call in this matter.

      **SO ORDERED.**

<u>August 31, 2020      </u>
**DATE**

            **DOUGLAS R. COLE**
            **UNITED STATES DISTRICT JUDGE**